UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFERY DUANE COX,

        Petitioner,

                                      Case No. 1:06-cv-405
v.                                      Hon. Robert J. Jonker

CINDI S. CURTIN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is now before the court on the merits of the amended petition (docket no. 12) and petitioner's "motion to amend a habeas petition to expand an issue" (docket no. 51).

### I.        Background

On December 6, 2002, the Calhoun County Prosecutor authorized a felony complaint against petitioner, charging him with two counts of third-degree criminal sexual conduct (CSC III), M.C.L. § 750.520d(1)(c) for engaging in sexual contact with an alleged mentally incapable victim, Timothy Cieslak, on November 25, 2002. *See* docket no. 48. There was no contention that the alleged victim was under age of consent (he was not), or that he did not participate in the sexual acts by choice. Rather, the state asserted that the purported victim was not mentally capable of consenting to the acts. Petitioner's first trial was declared a mistrial on June 26, 2003, because of a hung jury. *See* docket nos. 29, 48. Petitioner was retried on the same charges, and on July 15, 2003, a jury convicted him on both counts of CSC III, "for engaging in anal and oral sex with a

seventeen-year-old, mentally incapable victim." *People v. Cox*, 268 Mich. App. 440, 442; 709 N.W.2d 152 (2005); docket no. 32.

One issue central to this petition is whether the prosecutor withheld from the defense the following exculpatory evidence bearing on the victim's mental capacity. On December 19, 2002, less than two weeks after the filing of the felony complaint against petitioner, the Calhoun County Prosecutor also authorized a felony complaint against the purported victim in the present case, Timothy Cieslak, for larceny from a building (stealing money from a dwelling house), contrary to M.C.L. § 750.360. *See* docket no. 48. On February 27, 2003, the prosecution amended the complaint against Cieslak to include a count for the misdemeanor of larceny under $200, dismissed the felony count, and Cieslak pled guilty to the misdemeanor. *See* docket no. 48. Commission of this crime requires specific intent. See MCL 760.377a(1)(d); CJI 2d 22.3 - Honest Taking - Larceny; CJA 2d 23.1 - Larceny. At the plea hearing, Cieslak explicitly waived his right to a preliminary hearing, waived his right to a trial, and waived his right to be represented by an attorney at the trial. *Id.* Cieslak admitted that he stole money under $200 on December 18, 2002. *Id.* The court accepted the plea and sentenced Cieslak to a fine of $100, court costs of $150, a state judgment fee of $9, a victim's rights assessment of $50, and restitution in the amount of $13, or, in the alternative, 15 days in jail. *Id.* There was no further action on Cieslak's criminal case until July 25, 2003, ten days *after* petitioner's trial in the present case, when Cieslak appeared in court on a bench warrant for failure to pay the fines and costs. *See* docket no. 48.

Shortly before petitioner was sentenced in the present case on August 14, 2003, his counsel discovered that Cieslak had entered the guilty plea discussed above. Sent. Trans. at pp. 3-6 (docket no. 34). Petitioner's counsel argued that the fact of Cieslak's plea should have been

presented to the jury in the present case as exculpatory evidence concerning Cieslak's mental status, because "[y]ou cannot plea if there's a mental defect." *Id.* at 4. The prosecutor advised the court that he had received a discovery request for this information, and explained his actions as follows:

> The conviction was for larceny less than $200.00. The information that I have right now [sic]. I do admit to the fact that the discovery request did request that information; however, I found this information out this morning myself. Talked to the case worker, Rhonda Burley (phonetic), and have been provided with the information of the conviction or the plea was to larceny less than $200.00. And based on Michigan Court Rule 609, the elements of theft for those particular reasons, it would have had to have been a misdemeanor of excess of one year, which larceny under $200.00 is not.

*Id.* at p. 5. The trial judge declined to address the issue at petitioner's sentencing, denied petitioner's motion for an adjournment, invited defense counsel to file a motion for a new trial, and proceeded to sentence petitioner. *Id.* at pp. 6-7. Petitioner's counsel, however, did not file such a motion.

Petitioner, through appellate counsel, raised four issues in his direct appeal to the Michigan Court of Appeals:

I. Is [petitioner's] conviction constitutionally deficient because the evidence was insufficient; his conviction must be reversed. US Const Am XIV; Mich Const Art 1, § 17, 20?

II. Is [petitioner] entitled to a new trial based on the violation of the discovery order and suppression of exculpatory evidence or, in the alternative, based on newly discovered exculpatory evidence. US Const Am VI; XIV?

III. Did the prosecutor deny [petitioner] a fair trial by denigrating [petitioner], raising unsupported, highly inflammatory innuendo, and appealing to the civic duty of the jury; counsel's failure to object denied [petitioner] his right to effective assistance of counsel. US Const Am VI; XIV?

IV. Must [petitioner] be resentenced where several offense variables were mis-scored and he was sentenced on the basis of inaccurate information. US Const Am XIV?

*See* Brief on Appeal (docket no. 35). Petitioner also moved to remand this matter for a new trial because the government failed to turn over evidence that the victim had previously pled guilty to a larceny charge and could not be considered mentally incapable pursuant to M.C.L. § 750.520d(1)(c). *See* Motion to remand (docket no. 35). Counsel asserted two grounds for the new trial. First, that the government's action amounted to the improper suppression of exculpatory evidence. Second, that Cieslak's guilty plea was newly discovered evidence.

The Michigan Court of Appeals denied the motion for a new trial and affirmed the conviction. *Cox*, 268 Mich. App. 440. In a strongly worded and well-reasoned dissent, pointing out the obvious shortcomings in the majority opinion, Judge Cooper concluded that the government had withheld exculpatory evidence, because Cieslak's competency to enter a guilty plea in a criminal prosecution negated an element of the charged crime, i.e., the victim's inability to consent to a sex act:

> I must respectfully dissent from the majority opinion of my colleagues. The prosecutor withheld highly relevant exculpatory evidence that negated an element of the charged offenses. This evidence certainly would have affected the outcome of defendant's trial. Accordingly, I would vacate defendant's conviction and remand for a new trial.
>
> Defendant was convicted of two counts of third-degree criminal sexual conduct for engaging in sexual acts with a mentally incapable young man. Such conduct is prohibited to protect those "presumed to be incapable of truly consenting to the sexual act." The complainant in this case was seventeen years old and, therefore, was otherwise able to engage in consensual sexual acts.
>
> During discovery, defendant requested from the prosecutor all potentially exculpatory information and the criminal history of all prosecution witnesses. Rather than make all the requested disclosures, the prosecutor indicated that the criminal history of the witnesses would only be provided upon court order. It was not until the week before sentencing that defense counsel learned that the complainant, who was allegedly mentally incapable of consenting to a sexual act, was mentally competent to enter a plea in an unrelated criminal action.

Although the evidence involves the criminal history of a witness, the evidence is also clearly exculpatory and should have been disclosed by the prosecutor. A prosecutor, upon request, must provide a defendant with any known exculpatory information or evidence. The prosecutor is under a constant duty to automatically disclose additional exculpatory information as it is discovered. The prosecutor learned of the plea from the complainant's Family Independence Agency caseworker, who also served as a witness for the prosecution in this case. The prosecutor should have discovered this information in a timely fashion and made the required disclosure to defendant.

I disagree with the majority's determination that the prosecutor's failure to disclose this information was harmless. A trial court's previous determination that the complainant was competent to enter a plea is directly relevant to whether he was mentally capable of consenting to a sexual act. A trial court "may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate . . . ." The court must first determine that the defendant understands the legal ramifications of pleading guilty and the rights that he or she will give up in exchange for that plea. The standard of competency to enter a plea of guilty or nolo contendere is the same as that to stand trial - "[a] defendant to a criminal charge . . . shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner . . . ."

Being "mentally incapable" of consenting to a sexual act means that "a person suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." This inability to appraise the nature of his conduct encompasses both the physical act of sex and the nonphysical factors that accompany the act. A rational finder of fact could find that a person who is deemed capable of understanding the nature and object of the criminal proceedings against him and the legal effects of pleading guilty or nolo contendere to criminal charges is also capable of understanding the physical, emotional, and moral nature and object of a sexual act.

The fact that a trial court deemed the complainant competent to enter a plea in criminal proceedings would directly negate an element of the charged offense - the complainant's ability to consent to sexual acts. However, at defendant's trial, the jury heard only the prosecution's undisputed evidence regarding the level of the complainant's mental ability. Defendant's inability to place this highly material and relevant evidence before his jury clearly affected the outcome of his trial. Accordingly, I would find that defendant was entitled to a new trial.

*Cox*, 268 Mich. App. at 456-58, Cooper, J. (dissenting) (footnotes omitted).

Petitioner raised the same four issues in his application for leave to appeal to the Michigan Supreme Court, which was denied. *See People v. Jeffery Duane Cox*, No. 129892 (Mich. March 29, 2006) (docket no. 36).

On June 2, 2006, petitioner Cox filed a petition for writ of habeas corpus in the Eastern District, seeking habeas relief pursuant to 28 U.S.C. § 2254. *See* docket no. 1. The action was transferred to this district. *Id.* On July 14, 2006, petitioner filed an amended petition to cure deficiencies in the original petition. *See* docket no. 12. The amended petition raised the four grounds previously raised in the Michigan appellate courts:

I.    [Petitioner's] conviction is constitutionally deficient because the evidence was insufficient. His conviction must be reversed.

II.   [Petitioner] is entitled to a new trial based on the violation of the discovery order and suppression of evidence based on newly discovered exculpatory evidence.

III.  The prosecutor denied [petitioner] a fair trial by denigrating [petitioner], raising unsupported highly inflammatory innuendo and appealing to the civic duty of the jury; counsel's failure to object denied [petitioner] his right to effective assistance of counsel.

IV.   [Petitioner] must be resentenced where several offense variables were mis-scored and he was sentenced on the basis of inaccurate information.

Docket no. 12.

Petitioner filed a motion in this court for discovery on the issue of the victim's criminal record. When no response was forthcoming from the State, this court appointed the federal public defender to represent petitioner and granted petitioner's motion for discovery. *See* docket nos. 43 and 50. As a result, the record has now been expanded to include, among other things:

1.    Felony complaint against Timothy Cieslak, 10th District Case No. C02-11459 (docket 48-5);

2.      Deferred payment Agreement to the 10th District Court Case No. C02-11459 (docket po. 48-5);

3.      Advice of Rights to Tim Cieslak (docket no. 48-6);

4.      Plea and Sentencing Transcripts, *People v. Timothy Cieslak*, 10th District Court Case No. C02-11459 (Feb. 27, 2003) (docket no. 48-7) (the two proceedings were transcribed in a single transcript); and,

5.      Bench Warrant Arraignment Transcript, *People v. Timothy Cieslak*, 10th District Court Case No. C02-11459 (July 25, 2003) (docket no. 48-8).

*See* Order of December 11, 2008 (docket no. 50).

## II.      Petitioner's motion to amend

Petitioner now seeks to amend the amended petition to add new claims of ineffective assistance of counsel.  Specifically, petitioner contends:  that trial counsel did not perform a thorough pre-trial investigation; that trial counsel failed to move for a new trial after sentencing; and that appellate counsel failed to raise the ineffective assistance of trial counsel on appeal.

Pursuant to 28 U.S.C. § 2242, a habeas petition may be amended "as provided in the rules of procedure applicable to civil actions."  Fed. R. Civ. P. 15(a)(2) allows a party to amend its original pleading on leave of court, which the court "should freely give . . . when justice  so requires."  An amendment relates back to the date of the original pleading when the "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  However, in *Mayle v. Felix*, 545 U.S. 644, 661 (2005), the United States Supreme Court rejected the argument that the "conduct, transaction, or occurrence" at issue in a § 2254 action should be defined so broadly as to include any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction. Rather, relation back is permitted "only when the claims added by amendment arise from the same

core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657. After noting that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for filing habeas petitions,[1] the court observed that "[i]f claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662. Thus, "[a]n amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

For this reason, petitioner's newly asserted claims of ineffective assistance of counsel do not relate back to the filing date of the original petition. As the Supreme Court "made crystal clear" in *Mayle*, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005). *See also United States v. Stover*, 576 F. Supp. 2d 134, 140 (D. D.C. 2008) (where petitioner made general claims of ineffective assistance of counsel, new claims of distinct types of attorney malfeasance occurring before, during and after trial do not relate back to the original petition under Rule 15); *Williams v. Harrison*, No. 05-cv-2150, 2007 WL 1110910 at *6 (S.D.Cal. March 18, 2007) ("[b]ecause the original Petition does not contain any claim concerning appellate counsel, the first new claim does not relate back"); *Guzman v. Houk*, No. 2:04-cv-194, 2006 WL 1064052 at *10 (S.D. Ohio April 20, 2008) (denying

---

[1] *See* 28 U.S.C. § 2244(d)(1)(A).

amendment raising new claims of ineffective assistance of counsel citing *Ciampi*). The only ineffective assistance of counsel claim raised in the state appellate courts pertained to trial counsel's failure to object to the prosecutor's comments about petitioner. The new proposed ineffectiveness habeas claims are unrelated and therefore untimely. Accordingly, petitioner's motion to amend (docket no. 51) should be Denied.

### III.     Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the AEDPA, which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

## IV.     Petitioner's habeas claims

## A.     Insufficient Evidence

Petitioner contends that insufficient evidence exists to support his conviction. The Michigan Court of Appeals addressed this issue as follows:

> Defendant first argues that there was insufficient evidence to convict him of the CSC III charges. We disagree. We review de novo challenges to the sufficiency of the evidence in a criminal trial to determine whether, when viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found all the elements of the charged crime to have been proven beyond a reasonable doubt. *People v. Bowman*, 254 Mich.App. 142, 151, 656 N.W.2d 835 (2002). Additionally, we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v. Nowack*, 462 Mich. 392, 400, 614 N.W.2d 78 (2000).

> MCL 750.520d(1)(c) provides that a person is guilty of CSC III if he or she engages in sexual penetration with another person whom he or she knew or had

reason to know was mentally incapable, mentally incapacitated, or physically helpless. " 'Mentally incapable' means that a person suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MCL 750.520a(g).

Defendant first argues that the evidence was insufficient to support a finding that the victim was mentally incapable because the victim attended school, was able to perform automotive repairs, could hold conversations and maintain relationships with people, and could choose his sexual partner. Defendant contends that the victim was "mentally capable" because he had "not only an understanding of the physical act [of sex] but also an appreciation of the nonphysical factors, including the moral quality of the act, that accompany such an act," as described by this Court in People v. Breck, 230 Mich.App. 450, 455, 584 N.W.2d 602 (1998). However, a review of the record indicates that there was ample evidence from which to conclude that the victim was mentally incapable of consenting to the sexual relationship with defendant.

When asked about the sexual acts between himself and defendant, the victim stated, "[h]e-I just wanted to try something new and so he asked me if I wanted to, and I said yeah, so we went on." The victim felt that "[i]t was kind of dumb," and replied "kind of" when asked if he knew that the sexual relationship with defendant was homosexual in nature.

The victim's Family Independence Agency caseworker testified that the victim was not ready to live on his own and that he was easily manipulated and persuaded to do things that he probably would not do without another's influence. The caseworker's opinion was that, mentally, the victim was about twelve or thirteen.

A psychologist who examined the victim testified that the victim had a significant history of abuse and neglect, and was mentally deficient, functioning in the "borderline" range of intelligence, which is a step below "below average" and a step above "mental retardation." He opined that the victim was developmentally around the age of eleven, twelve, or thirteen. He explained that if compared to a hundred of his peers, the victim would function in the lowest three to five percent range because of his lower intelligence, poor language development, and inability to adapt or be flexible when presented with new situations. He indicated that the victim has difficulty interpreting things, lacks self-insight or self-awareness, and does not think about his own behavior, but acts out and deals with the consequences later. He stated that the victim's personality issues and tendency not to consider his actions leaves him vulnerable to exploitation because "he is an easy child to manipulate." He characterized the victim as a "pretty immature individual," and opined that even though the victim "certainly . . . knew what was proposed" and was aware of his conduct, he could not appreciate the social or moral significance of his

acts relating to the homosexual encounter with defendant and was incapable of making an informed decision about sexual involvement.

A counselor with a significant history of treating the victim described him as impressionable and very susceptible to manipulation by others, and characterized him as a follower. He testified that the victim's troubles occur when he is talked into doing things or following another's lead and that he allows his personal rights to be violated to gain acceptance by others. He stated that the victim's need for acceptance is so great that he gravitates to anyone who will pay attention to him and cannot distinguish whether a person is being genuine in their actions. He stated that the victim "absolutely" has a mental disability and opined that the victim functions emotionally on a level between the ages of eight and ten, and intellectually at a fourth- or fifth-grade level. He also opined that the victim is unable to recognize the consequences of a homosexual relationship and that the victim would confuse a sexual relationship with his need for acceptance, thereby placing himself in a dangerous or jeopardizing situation.

This Court, in *Breck*, *supra* at 455, 584 N.W.2d 602, held that the term "mentally capable" encompasses an understanding of both the physical and nonphysical factors of a sex act. The evidence presented at trial supports a finding that, regardless of the victim's awareness of the events as they occurred, he did not understand the nonphysical aspects of the sex acts and was mentally incapable of consenting to the sexual relationship with defendant. Viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a rational trier of fact could find that the victim suffered from a mental disease or defect that rendered him incapable of appraising the nature of his conduct. MCL 750.520a(g).

Defendant also argues that the evidence was insufficient to support a finding that he knew or had reason to know that the victim was mentally incapable of consenting to a sexual relationship because, while reasonable persons coming into contact with the victim would notice that he was "slow," they would not believe him mentally incapable of appraising the nature of his conduct. Defendant supports his assertion with this Court's statements in *People v. Davis*, 102 Mich.App. 403, 407, 301 N.W.2d 871 (1980), that the Legislature's inclusion of the "knows or has reason to know" language in the statute was intended to "protect[ ] individuals who have sexual relations with a partner who appears mentally sound, only to find out later that this is not the case." This Court concluded that "[t]he Legislature only intended to eliminate liability where the mental defect is not apparent to reasonable persons." *Id.* at 407, 301 N.W.2d 871.

However, several witnesses testified that the fact that the victim was mentally deficient is readily noticeable after only a short period of interaction. The psychologist opined that a reasonable person could discern within an hour that the

victim has a mental defect, because the victim has inarticulate language, difficulty understanding words, and does not make inquiries typical of a seventeen-year-old. There was also evidence that defendant had ample opportunity to notice these limitations. The victim testified that he had been to defendant's house between five and ten times and that defendant visited him at his foster home. The investigating police officer testified that defendant admitted harboring the victim when he ran away from his foster home.

Viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a rational trier of fact could find that defendant knew or had reason to know that the victim was mentally incapable of consenting to a sexual relationship. Moreover, sufficient evidence was presented from which a rational trier of fact could find that all the elements of CSC III were proven beyond a reasonable doubt; therefore, defendant is not entitled to relief on this issue.

*Cox*, 268 Mich. App. at 443-447.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the factfinder's verdict. *United States v. Rayburn*, 495 F.3d 328, 337-38 (6th Cir. 2007). The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Petitioner maintains that the evidence did not establish that Cieslak, the purported victim, suffered from a mental disease or defect which rendered him incapable of apprising the

nature of his conduct, within the meaning of MCL § 750.520a(g).  He points out that to the extent

Cieslak demonstrated a lack of capacity, there was not sufficient evidence to show that it was caused

by either a mental disease[2] or defect.

The parties agree that the statutory definition, as explained in *People v Breck,* 230

Mich. App. 450 (1998), "is meant to encompass not only an understanding of the physical act <u>but

also an appreciation of the nonphysical factors, including the moral quality of the act, that

accompany the act</u>" (emphasis added).  The term "mental defect" seems ill defined in Michigan law,

but as commonly understood means "deficiency" (Webster's *New Collegiate Dictionary,* G. & C.

Merrium Company, Springfield, MA), and there were repeated observations by witnesses about

defendant being mentally deficient.  (*See, e.g.,* Trial Trans. II at 8, Trial Trans. III at 6, 15, 21-22.)

While the testimony suggests Cieslak understood the physical acts he engaged in, there was various

testimony from which a fact finder could decide Cieslak did not appreciate the significance of those

acts, e.g., because of the mental age attributed to him.  Much of this is outlined in Michigan Court

of Appeals' decision.  And while aspects of this evidence are certainly debatable, that is not the

issue.

I find the Michigan Court of Appeals' conclusion, that when viewing the facts in the

light most favorable to the prosecution (at least those facts that were presented to the jury) a rational

juror could have found the elements of the crime beyond a reasonable doubt, was not based on an

unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254 (d).

---

[2]Petitioner correctly points out that there was no DSM diagnosis or evidence of a mental disease in
this case.

Petitioner cannot show by clear and convincing evidence to the contrary. Accordingly, petitioner is not entitled to relief on this claim.

Again, however, this conclusion of sufficiency only has validity when the review is limited to the evidence the jury was allowed to see. As petitioner and Judge Cooper point out, the Calhoun County Prosecutor withheld critical evidence regarding Cieslak's mental capabilities. For the reasons stated below, the defense should have been able to present this additional evidence of Cieslak's mental capacity to the jury.

## B. New Trial

Petitioner contends that he is entitled to a new trial because the prosecutor suppressed evidence of the victim's guilty plea in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The court agrees.

The Michigan Court of Appeals performed a plain error review of this issue because petitioner failed to preserve the issue in the lower court:

> Defendant next argues that he is entitled to a new trial on the basis of a discovery violation and suppression of evidence that the victim pleaded to a larceny charge, or, in the alternative, on the basis of the victim's plea characterized as newly discovered evidence. Specifically, defendant argues that the fact that the victim entered a plea would have rebutted the prosecution's theory that the victim was mentally incapable of consenting to sexual relations on the basis that a defendant must be deemed competent in order for a trial court to accept a plea. *See People v. Kline*, 113 Mich. App. 733, 738, 318 N.W.2d 510 (1982).

> We note that the record contains no substantiated information regarding the victim's plea other than that placed on the record at defendant's sentencing hearing. Aside from the prosecutor's unverified indication that the plea was to a charge of larceny involving less than $200, MCL 750.356a(2)(a), the record is devoid of information concerning the date of the plea, the charge or charges at issue, and whether it was a guilty plea or a no contest plea.

> The record indicates that at defendant's sentencing hearing the trial court denied defendant's motion to adjourn so that defense counsel could prepare a motion

for a mistrial and advised defendant that the appropriate forum in which to address the issue was a motion for a new trial; however, defendant failed to preserve the issue by moving for a new trial in the lower court under MCR 2.611(A)(1)(f) or by moving for relief from judgment under MCR 2.612(C)(1)(b). *People v. Darden*, 230 Mich. App. 597, 605-606, 585 N.W.2d 27 (1998). Consequently, our review is limited to plain error affecting substantial rights. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999).

A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt. *People v. Stanaway*, 446 Mich. 643, 666, 521 N.W.2d 557 (1994), citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *People v. Lester*, 232 Mich.App. 262, 281, 591 N.W.2d 267 (1998).

Defendant has failed to establish a *Brady* violation. Defendant has not proven that the prosecution possessed evidence that was favorable to him, i.e., that the victim pleaded to a larceny charge. Indeed, MCR 6.201(B)(1) requires a prosecutor to provide a defendant with any exculpatory information or evidence known by the prosecutor, and the prosecutor indicated that he had just learned of the information on the day of the sentencing hearing. Moreover, even if the prosecution knew of the victim's criminal history, defendant failed to pursue the proper channels for obtaining such information-the prosecution's answer to defendant's disclosure demand indicated that the criminal histories of witnesses would only be provided to defense counsel upon court order, and defendant failed to move for a discovery order. As such, defendant's reliance on *People v. Pace*, 102 Mich.App. 522, 530-531, 302 N.W.2d 216 (1980), in which this Court held that a prosecutor's violation of a discovery order, even if done inadvertently in good faith, requires that a defendant's conviction be reversed "unless it is clear that failure to divulge was harmless beyond a reasonable doubt," is inapposite. Additionally, defendant has not proven that had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. The record does not establish whether the plea was contemporaneous with the victim's alleged consent to sexual penetration in this case. If it was not, it would have made no difference whatsoever to the fact-finder's determination on the consent issue. Further, even if it was contemporaneous, a determination that the victim was competent to enter a plea has little, if anything, to do with the mental capacity to consent to a sexual relationship. [FN1] Defendant has failed to establish plain error affecting his substantial rights, and is not entitled to a new trial on the basis of a *Brady* violation.

Defendant argues in the alternative that he is entitled to a new trial on the basis of the victim's plea, which he characterized as newly discovered evidence. For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. *People v. Cress*, 468 Mich. 678, 692, 664 N.W.2d 174 (2003); MCR 6.508(D).

The evidence of the victim's plea was newly discovered and not cumulative, and the record supports a conclusion that the evidence was not discoverable and could not have been produced at trial. However, as noted above, the record does not show that evidence regarding the plea would make a different result probable on retrial. Again, defendant has failed to establish plain error affecting his substantial rights, and he is not entitled to a new trial on the basis of newly discovered evidence.

> [FN1.] The procedures for determining a criminal defendant's competence to enter a plea are ultimately rooted in principles of due process, to protect incompetent defendants from indefinite denials of liberty. *People v. Bowman*, 141 Mich. App. 390, 399, 367 N.W.2d 867 (1985); *People v. Belanger*, 73 Mich. App. 438, 447-450, 252 N.W.2d 472 (1977). Contrast MCL 330.2020(1) (a defendant is incompetent to stand trial, and, by analogy, to enter a plea, "only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner") with MCL 750.520a(g) (a person is "mentally incapable" if he or she suffers from a mental disease or defect that renders him or her temporarily or permanently incapable of appraising the nature of his or her conduct).

*Cox*, 268 Mich. App. at 447-450.

The deferential standard of review acquired by the AEDPA, discussed *infra,* applies only to a claim that has been "adjudicated on the merits in State court proceedings." *Ibid.* Defendant's *Brady* claim in the present case has not been "adjudicated on the merits" because the evidence of Cieslak's plea of guilty to a specific intent crime, which forms the basis of his Brady claim, was not in the record before the Michigan Court of Appeals. The Court of Appeals explicitly acknowledged in its review that:

"the record contains no <u>substantial</u> information regarding the victim's plea other than that it was placed on the record at defendant's sentencing hearing. Aside from the prosecutor's <u>unverified</u> indication that the plea was to a charge of larceny less than $200.00, MCL 760.356a(2)(a), the <u>record is devoid of information concerning the date of the plea, the charge or charges at issue, and whether it was a guilty plea or a no contest plea.</u>

\*\*\*

<u>Defendant has not proven</u> that the prosecution possessed evidence that was favorable to him, i.e., <u>that the victim pleaded to a larceny charge.</u>

\*\*\*

<u>The evidence of the victim's plea was newly discovered</u> and not cumulative, and the <u>record supports a conclusion that the evidence was not discoverable and could not have been produced.</u>

(emphasis added)[3]

In a December 31, 2008 case remarkably similar to this one,[4] *Brown v. Smith,* 551 F.3d 424, the Sixth Circuit pointed out:

That, in the context of a *Brady* claim, when the petitioner's habeas claim involves *Brady* material that was uncovered only during the federal habeas

---

[3]The State has also uniformly taken the position before both Michigan appellate courts that Cieslak's plea of guilty was "not a fact in the record before the court." People's Brief in Opposition to Defendant's Application for Interlocutory Appeal before the Michigan Supreme Court, 12/29/05, at 11;, People's Brief on Appeal to the Michigan Court of Appeals, 12/21/04, at 10-11. (Indeed, it is disturbing that during the 2 ½ years this case was on appeal to the Michigan appellate courts, the State not only argued that Cieslak's conviction was not a matter of record in the trial court, but continued to imply in its appellate briefs that some question remained even then as to whether there had actually been a guilty plea, e.g., *id.,* 10-12, ("Defendant does not indicate [in his brief on appeal] support for [his contention there was actually a guilty plea] or how he knows this information to be accurate; and plaintiff questions this information, based on the record before the court"), despite the easily obtainable public record clearly setting forth Cieslak's plea and conviction. Regardless of how the State chose to deal with the fact of Cieslak's guilty plea, in the interest of justice it should not have turned a blind eye to the existence of that fact.)

[4]In *Brown* the defendant was convicted of sexually molesting his teenage daughter. He argued that his trial attorney failed to obtain his daughter's counseling records, which did not become available until the federal habeas proceeding, and that these would have undermined her credibility. The Sixth Circuit held that AEDPA deference did not apply, since the counseling notes were not in the record before the Michigan Court of Appeals and therefore defendant's ineffective-assistance-of-counsel claim had not been "adjudicated on the merits" by the State appellate court.

proceeding, AEDPA deference does not apply to an earlier, state-court *Brady* adjudication involving a different mix of allegedly improperly withheld evidence. *Joseph v. Coyle,* 469 F.3d 441, 469 (6th Cir., 2006); *See also, Monroe v. Angelone,* 323 F.3d 286, 297 (4th Cir., 2003) ("AEDPA's deference requirement does not apply when a claim made on federal habeas review is premised on *Brady* material that has surfaced for the first time during federal proceedings.").

Likewise, in the present case, although defense counsel attempted to present the evidence at sentencing, having just learned of it, the trial judge refused to consider it ("the issue that you raised, I don't feel comfortable simply – I'm not going to address it today, no matter what." Sent. Trans. at 6.[5]), and the Michigan Court of Appeals subsequently ruled as a matter of fact that the record was "devoid" of the essential information, and that the defendant had not proven "that the prosecution possessed evidence that was favorable to him, i.e., that the victim pleaded to a larceny charge." Michigan Court of Appeals opinion, *supra.* The *Brady* material at issue was only

---

[5]*Brown* points out at 429 that petitioner must not be at fault for failing to develop the evidence in state court, and petitioner was not at fault in this case. The prosecutor admitted at sentencing that he had previously received a discovery request for this type of information (Sent. Trans. at 5), but had only learned of it himself that morning. While it is difficult to fully credit the prosecutor's assertion of belated knowledge, since 1) his office has prosecuted Cieslak, 2) he would presumably have thoroughly investigated Cieslak's background before bringing the prosecution since Cieslak was supposedly the vulnerable victim in the case, and 3) he learned of the conviction from Cieslak's caseworker who had been one of his witnesses at the trial a month earlier, his admission nevertheless makes it plain that the fault in not producing this evidence for trial lay with the prosecution and not the defense.

Also, in a related contention, the Michigan Court of Appeals suggests that even if the prosecution knew of Cieslak's criminal history, "defendant failed to pursue the proper channels for obtaining such information – the prosecutor's answer to defendant's disclosure demand indicated that the criminal histories of witnesses would only be provided to defense counsel upon court order, and defendant failed to move for a discovery order." *Michigan Court of appeals opinion, supra.* However, the State's attorney at the hearing in this court candidly admitted that he did not know the basis for the prosecutor taking the position that an additional order was required, and acknowledged that in any case such a requirement would not trump the prosecutor's obligation under *Brady* to produce this material without any order. *See United States v. Agurs,* 427 U.S. 97, 103, 107 (1976).

allowed to surface after it was obtained by the petitioner's habeas counsel during his own investigation and subsequently made a part of the habeas record by order of this court.

Accordingly, I find that the deferential standard of the AEDPA has no place here, since there "is not relevant state court adjudication to which this court can defer."[6] *Brown, supra,* at 428-430; *see Killian v. Poole,* 282 F.3d 1204, 1208 (9th Cir., 2002) (AEDPA deference does not apply where "evidence . . . was adduced only at the hearing before the [federal] magistrate judge" since, without the evidence, "the state courts could not have made a proper determination on the merits."). Moreover, the Supreme Court itself ruled in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution," and implicitly constitutes a per se excuse (i.e., "cause" and "prejudice") for procedural default in habeas review. *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006), *quoting Brady*, 373 U.S. at 87. As the Supreme Court explained in *Banks v. Dretke*, 540 U.S. 668 (2004):

> *Brady*, we reiterate, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We set out in *Strickler v. Greene* [527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ] the three components or essential elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." "[C]ause and prejudice" in this case "parallel two of the three components of the alleged *Brady* violation itself." Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows "cause" when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady*

---

[6]For its part, the State at the hearing before the magistrate judge did not contest that *Brown v. Smith* was applicable in this instance.

component (prejudice), prejudice within the compass of the "cause and prejudice" requirement exists when the suppressed evidence is "material" for *Brady* purposes.

*Bank*, 540 U.S. at 691 (citations omitted) (as quoted in *Apanovitch*, 466 F.3d at 474).

"While the *Brady* rule encompasses both exculpatory and impeachment evidence, *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), it only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial, and the duty to disclose applies even if the defense made no request. *United States v. Agurs*, 427 U.S. 97, 103, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)." *Apanovitch*, 466 F.3d at 474.

I conclude that petitioner has unquestionably demonstrated a *Brady* violation. The evidence at issue, Cieslak's plea, was certainly favorable to petitioner because it was exculpatory evidence. At trial, Cieslak testified that he wanted to "try something new" sexually and consented to have sex with petitioner. Trial Trans. I at 56, 60-61. The issue before the jurors was whether Cieslak was capable of giving consent. The evidence of Cieslak's plea is exculpatory because his ability to legitimately understand and waive legal rights and enter a guilty plea was inconsistent with an element of the charged offense, i.e., that Cieslak was "mentally incapable" of consenting to sex. In pleading guilty, Cieslak convinced a judge and his defense attorney that he understood the consequences of his action, which included a possible fine, costs and jail time. He also waived his rights and signed a waiver form. The Calhoun County Prosecutor also implicitly thought Cieslak competent because he authorized the charge in the first place.

Further, Cieslak's plea and the judge's acceptance of the plea was potent material with which to cross-examine the prosecutor's witnesses because it directly conflicted with the witness' testimony that Cieslak, as the purported victim, had the mental capacity of a child and lacked the capacity to understand the consequences of his decision to have sex with petitioner. The

fact that the "victim" could understand both the legal and factual consequences arising from a guilty plea begs the question as to whether he could understand the consequences of having sex. The prosecutor would have been hard pressed to explain to a jury why he felt his office could criminally prosecute Cieslak for a specific intent crime one day and treat him as a child the next.

Second, it is undisputed that the evidence was suppressed by the Calhoun County Prosecutor, either willfully or inadvertently. That Cieslak pled guilty to a larceny of less than $200.00 has been established beyond doubt as a matter of fact, as evidenced by the transcript of his plea and the related court records now in the record. The prosecutor himself acknowledged this on the record at sentencing ("The conviction was for a larceny less than $200.") Sent. Trans. at p. 5. The State does not now contest this fact, even if it is a little late to the party.

Although the information was never furnished, the prosecutor candidly admitted to the trial judge that this type of information had been previously requested by the defense ("I do admit to the fact that the discovery request did request that information"), *id.,* as defense counsel had maintained it had been, *id.* at 3-4, although no request was even required. *United States v. Agurs, supra.*. The prosecution's suppression of this evidence was made even more egregious by the fact that Cieslak's plea was taken in February 2003, only four months before petitioner's first trial. Even if this particular prosecutor within the Calhoun County Prosecutor's Office did not have first-hand knowledge of his office's prosecution of the victim (which would be surprising if the prosecutor had investigated the victim's background, upon which this whole prosecution was premised), such knowledge is imputed to him. "In order to comply with *Brady* . . . 'the individual prosecutor has a duty <u>to learn</u> of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Strickler*, 527 U.S. at 281, quoting *Kyles*, 514 U.S. at 437

(emphasis added). To his credit, the State's attorney did not dispute this obligation, conceding at oral argument in this court that such knowledge was attributable to the prosecutor even if he did not have actual knowledge.

Third, petitioner was prejudiced by the suppression of this evidence. The Sixth Circuit explained the analysis of the prejudice requirement in a *Brady* claim as follows:

> When analyzing a petitioner's contention that he suffered prejudice, we assume that the petitioner has stated a claim of constitutional magnitude, and proceed to discern whether the petitioner was actually prejudiced by the asserted errors. *United States v. Frady*, 456 U.S. 152, 170-72, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir.1996). The prejudice must have worked to the petitioner's actual and substantial disadvantage, thereby infecting his entire trial with an error of constitutional dimension. *Frady*, 456 U.S. at 170, 102 S.Ct. 1584, 71 L.Ed.2d 816. The failure to disclose such evidence is "material," and therefore "prejudicial," only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280, 282, 119 S.Ct. 1936 (*quoting Bagley*, 473 U.S. at 682, 105 S.Ct. 3375); *accord Spirko v. Mitchell*, 368 F.3d 603, 609 (6th Cir.2004), *cert. denied sub nom. Spirko v. Bradshaw*, 544 U.S. 948, 125 S.Ct. 1699, 161 L.Ed.2d 525 (2005); *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir.), *cert. denied*, 543 U.S. 982, 125 S.Ct. 488, 160 L.Ed.2d 362 (2004); *Zuern v. Tate*, 336 F.3d 478, 484 (6th Cir.2003), *cert. denied*, 540 U.S. 1198, 124 S.Ct. 1456, 158 L.Ed.2d 113 (2004); *United States v. Brown*, 332 F.3d 363, 369 (6th Cir.2003).

> A "reasonable probability" of a different outcome exists where the government's suppression of evidence undermines confidence in the outcome of the trial. *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555 (*citing Bagley*, 473 U.S. at 682, 105 S.Ct. 3375); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir.2003). The petitioner

> > must convince us that "there is a reasonable probability" that the result of the trial would have been different if the suppressed documents had been disclosed to the defense. As we stressed in *Kyles*, "The adjective is important: The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Strickler*, 527 U.S. at 289-90, 119 S.Ct. 1936 (*quoting Kyles,* 514 U.S. at 434, 115 S.Ct. 1555) (emphasis added); *accord United States v. Crayton*, 357 F.3d 560, 569

(6th Cir.2004), *cert. denied*, 542 U.S. 910, 124 S.Ct. 2857, 159 L.Ed.2d 279 (2004). Put another way, the *Brady* standard's prejudice is different from a more conventional prejudice analysis:

> the materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

*Strickler*, 527 U.S. at 290, 119 S.Ct. 1936 (*quoting in part Kyles*, 514 U.S. at 434-35, 115 S.Ct. 1555) (citations omitted). A *Brady* claim thus does not require showing that the introduction of the exculpatory evidence would have rendered the overall evidence insufficient to convict. *Kyles*, 514 U.S. at 434-35, 115 S.Ct. 1555; *United States v. Frost*, 125 F.3d 346, 383 (6th Cir.1997). Further, the withheld items of evidence must be considered collectively, not individually, to determine materiality. *Castleberry v. Brigano*, 349 F.3d 286, 291 (6th Cir.2003).

*Apanovitch*, 466 F.3d at 474-75.

This was a close case to begin with. It had already resulted in a hung jury at the first trial. Judge Cooper's dissenting opinion articulates the prejudice caused to petitioner from the suppression of the evidence of Cieslak's own criminal court proceedings. There is no question that the prosecution treated the victim as a competent adult in his larceny case. The prosecution of Cieslak, which included the victim's waiver of legal rights, entry of a guilty plea, and possible service of jail time, conflicted with the trial testimony that the victim was too mentally disabled to understand the "moral or social significance of his acts." *Cox*, 268 Mich. App. at 445. In the victim's criminal case, the prosecution took the position that Cieslak had the capacity to knowingly waive his legal rights to a preliminary examination and a trial, and to plead guilty to a larceny that he committed on December 19, 2002, only a few weeks after having sex with petitioner. After petitioner's trial, Cieslak continued to be treated like a competent adult, appearing at a hearing on a bench warrant which was issued for victim's failure to pay his fine and costs. In contrast, the

Calhoun County Prosecutor argued in petitioner's criminal case that the victim could not consent to have sex with petitioner as of November 25, 2002, because the victim only had the mental capacity of a child.  Trial Trans. III at 32-33.

In summary, the record reflects that five months *after* securing a guilty plea from the victim, the Calhoun County prosecutor had no qualms about representing to the jury during both his opening statement and his closing argument that Cieslak had the mental capacity of a 10 to 12-year-old child.  *See, e.g.,* Trans I. at 46, and Trans. III at 47.  Petitioner's defense counsel was entitled to receive the evidence about Cieslak's plea, because it was "favorable evidence [which] could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Strickler,* 527 U.S. at 290. Plainly, petitioner has demonstrated a *Brady* violatation.  As previously noted, the state court's decision that no *Brady* violation occurred is entitled to no deference in this instance but regardless was certainly an unreasonable application of clearly established Federal law as determined by the Supreme Court. 28 U.S.C. § 2254 (d).  Upon *de novo* review, petitioner was denied a fundamentally fair trial, and is entitled to habeas relief on this issue.

## C.    Prosecutorial misconduct

Next, petitioner contends that the prosecutor engaged in misconduct during the opening statement and closing argument.  The Michigan Court of Appeals addressed petitioner's claim of prosecutorial misconduct as follows:

> Defendant next alleges several instances of prosecutorial misconduct.  We review *de novo* claims of prosecutorial misconduct to determine whether defendant was denied a fair and impartial trial.  *People v. Ackerman*, 257 Mich. App. 434, 448, 669 N.W.2d 818 (2003).  However, defendant failed to object to the alleged instances of prosecutorial misconduct; therefore, they are unpreserved and our review is limited to plain error affecting defendant's substantial rights.  *Id.*

When reviewing a claim of prosecutorial misconduct, we examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *People v. Callon*, 256 Mich.App. 312, 330, 662 N.W.2d 501 (2003). Further, the propriety of a prosecutor's remarks depends on the particular facts of each case. *Id.* Prosecutors are free to argue the evidence and any reasonable inferences arising from the evidence, *id.*, and "need not confine argument to the 'blandest of all possible terms . . . .' " *People v. Aldrich*, 246 Mich.App. 101, 112, 631 N.W.2d 67 (2001), *quoting People v. Marji*, 180 Mich.App. 525, 538, 447 N.W.2d 835 (1989).

Defendant argues that the following comments improperly appealed to the jurors' civic duty and impermissibly denigrated his character:

> It's the People's theory that the Defendant is 30 years old, likes young boys, grooms them, manipulates them, does things in order to take advantage of them.
>
> * * *
>
> He's one of the worst type of predators we have in our society; somebody who takes advantage of somebody, goes after their weaknesses, and exploits those weaknesses for their own pleasure.
>
> * * *
>
> That's somebody that shouldn't be allowed to co-exist with our young people, shouldn't be allowed to apply his trade on this young man or any other young man.
>
> * * *
>
> [I]t's time to stop manipulating [the victim] and time to start expressing to [defendant] that this won't be tolerated in our society, and allow our children to grow, to prosper, without undue influence and manipulation for one's own sexual pleasures.

While a prosecutor may not argue that jurors should convict a defendant as part of their civic duty, *People v. Matuszak*, 263 Mich.App. 42, 56, 687 N.W.2d 342 (2004), we find that the prosecutor's remarks, in context, were not a call to convict as a matter of civic duty; rather, they were proper argument based on the facts in evidence and reasonable inferences drawn from those facts. *Ackerman*, *supra* at 454, 669 N.W.2d 818; *Aldrich*, *supra* at 112, 631 N.W.2d 67. The prosecutor's comments were made in conjunction with comments concerning defendant's modus operandi and consciousness of guilt. The prosecutor argued that defendant "exploited [the victim's] weaknesses," and "manipulated [the victim] because he knew that he was a foster child, he knew he was vulnerable, he knew that if he spent a little time, maneuvered, that he'd be able to take advantage of him" "for his own sexual pleasures and gratification." The prosecutor focused on defendant's initial denial of any sexual involvement with the victim and argued that defendant lied because he

knew he had done something wrong and did not truly believe that what he did was a consensual act between two mentally capable adults.

> While a prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks," *People v. Bahoda*, 448 Mich. 261, 282-283, 531 N.W.2d 659 (1995), the challenged remarks simply conveyed the prosecutor's contention that the evidence demonstrated that defendant knowingly took advantage of a mentally challenged individual. Because a prosecutor "has wide latitude and may argue the evidence and all reasonable inferences from it," *Aldrich*, *supra* at 112, 631 N.W.2d 67, the prosecutor's comments were not improper and did not deny defendant a fair trial or meet the threshold for reversal based on unpreserved error. *Ackerman*, *supra* at 448-449, 669 N.W.2d 818.

*Cox*, 268 Mich. App. at 450-453.

In addition, petitioner contends that his trial counsel was ineffective for failing to raise the prosecutorial misconduct claim. The Michigan Court of Appeals addressed the issue as follows:

> Defendant next argues that he was denied the effective assistance of counsel because defense counsel failed to object to the alleged instances of prosecutorial misconduct. Because defendant failed to move for a new trial or for a *Ginther* hearing, our review is limited to mistakes apparent on the record. *People v. Sabin (On Second Remand)*, 242 Mich. App. 656, 658-659, 620 N.W.2d 19 (2000). However, as noted above, the prosecutor's comments were not improper, and any objections by defense counsel on those grounds would have been meritless. Because counsel is not ineffective for failing to raise futile objections, defendant is not entitled to relief on this unpreserved issue. *Ackerman*, *supra* at 455, 669 N.W.2d 818.

*Cox*, 268 Mich. App. at 453 (footnote omitted).

The prosecutorial misconduct claim is procedurally defaulted, the Michigan Court of Appeals having reviewed this unpreserved issue for plain error. *See Hall*, 563 F.3d at 236; *Ege*, 485 F.3d at 378; *Lundgren*, 440 F.3d at 765. Petitioner contends that the procedural default should be excused by the ineffective assistance of his trial counsel, i.e., counsel's failure to object to the prosecutor's statements. Ineffective assistance of counsel may constitute cause for excusing a

procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Murray*, 477 U.S. at 488 (1986); *Strickland v. Washington*, 466 U.S. 668 (1984).

The court must first determine whether prosecutorial misconduct occurred in this case. The court considers the prosecutor's remarks within the context of the entire trial to determine whether any improper remarks resulted in prejudicial error. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). As a general rule, the prosecution has "wide latitude" during closing arguments to respond to the defendant's strategies, evidence and arguments. *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009). "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini*, 526 F.3d at 901. However, prosecutors cannot offer their opinions as to credibility of a witness or the guilt of a defendant, or discuss any purported facts not introduced into evidence. *Id.*

> As the Supreme Court explained in [*United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed.2d 1 (1985)], two separate harms stem from such arguments. *Young*, 470 U.S. at 18-19, 105 S.Ct. 1038. First, "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." *Id.* at 18, 105 S.Ct. 1038. Secondly, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id.* at 18-19, 105 S.Ct. 1038.

*Id.*

Nevertheless, even if the prosecutor's conduct was improper or even universally condemned, the court can provide federal habeas corpus relief only if the statements were so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416

U.S. 637, 643-45 (1974); *Hall*, 563 F.3d at 239 ("to merit habeas relief, the prosecutor's 'conduct must be both improper and flagrant'"); *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotations omitted).

"When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir.1993) (*quoting Smith v. Phillips*, 455 U.S. 209, 219 (1982)). The court should consider four factors in determining whether a prosecutor's improper remarks are so flagrant as to rise to the level of a due process violation: (1) the likelihood that the prosecutor's remarks tended to mislead the jury or to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately placed before the jury; and (4) the total strength of the evidence against the accused. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

From the very beginning of this trial, the prosecutor attempted to tap into that part of our psyche that considers sex crimes "especially heinous."[7]  The two charges at issue in this case arose out of a relationship between two men, a 30-year old and the other a slow 17-year old.  There was no evidence introduced at trial to suggest that defendant had ever attempted to have any kind of a similar relationship with other young men (or anyone else for that matter).  Yet, despite the fact the prosecutor must have known no evidence of this type would be forthcoming (he never sought

---

[7]Catch phrase of the frequently broadcast television show "Law and Order - Special Victims Unit"

to elicit any), his opening remarks to the jury were replete with representations casting defendant as a repeat sexual predator on the prowl for young boys.  In fact, he explicitly made this the theory of his case.  During his opening he said the following:

> "It's <u>the People's theory</u> that the defendant is 30 years old, <u>likes young boys, grooms them, manipulates them,</u> does things in order to take advantage <u>of them</u> . . . the fact that he, <u>in the People's theory, targets particular individuals</u> by his actions and mannerisms, what he does to take advantage <u>of these young boys, is what we find the real issue to be."</u>

> ***

> "But in some people's mind, . . . it's looking for a victim; it's looking for someone that can be used and abused for their own sexual pleasures.  And I submit to you that's what the evidence is going to prove; that the defendant <u>targeted</u> Timothy Cieslak . . . .

> ***

> That's <u>the people he picked on.</u>  That's <u>the people he targeted.</u>

> ***

> A 30-year old man <u>who likes young boys</u> is fundamentally wrong, . . .

> ***

> When you have people <u>taking advantage of young people</u> like that, it doesn't give them . . .

Trans. I at 46-48 (emphasis added).

> The prosecutor continued his predator theme in his closing argument:

> He's one of the <u>worst type of predators</u> we have in our society. . .

> And I submit to you <u>that's a predator.</u>  That's somebody that shouldn't be allowed to co-exist with our young people, shouldn't be allowed to <u>apply his trade</u> on this young man or any other man.

Trial Trans. III at 35 (emphasis added).

> . . . [it's] time to start expressing to Mr. Cox that this won't be tolerated in our society, and allow our children to grow, to prosper, without undue influence and manipulation for one's own sexual pleasures.

Trial Trans. III at 48.

In short, the prosecutor intentionally postured this case as an invitation to the jurors to take a sexual predator who repeatedly preyed on young boys off the street. The opinion of the Court of Appeals that the prosecutor's remarks were proper argument "based on the facts in evidence and reasonable inferences drawn from those facts" is simply not supported by the trial transcript. To say that the evidence in this record would permit one to extrapolate that defendant was a sexual predator who targeted young boys generally, is no different than claiming a person charged with a homicide is, by that fact alone, a serial killer.

Indeed, the infectious nature of the prosecutor's misconduct is no better demonstrated than in the Michigan Court of Appeal's opinion itself. When the appellate court attempted to explain away the prosecutor's remarks, it said they were "made in conjunction with comments concerning defendant's modus operandi and consciousness of guilt." But the court's choice of the words "modus operandi" is telling because, again, there was <u>no evidence</u> of a modus operandi[8] in this case. There was no evidence defendant ever did this with anyone else, before or after. By the unwitting use of this term, the appellate court is echoing the theory of the prosecutor's case, i.e., that the defendant "like[d] young boys," which the prosecutor put before the jurors in his opening

---

[8]Modus operandi is generally defined as "a method of procedure, especially: a distinct pattern or method of operation that indicates or suggests the work of a single criminal in more than one crime," *Merriam-Webster Online Dictionary*, or a "routine: an unvarying or habitual method or procedure." *wordnetweb.princeton.edu*

statement and for which there was no proof. If the prosecutor's comments could infect the Court of Appeals, one can only assume they poisoned the jury as well.

After reviewing the four factors as set forth in *Bates*, I conclude that the remarks rose to the level of prosecutorial misconduct that denied petitioner a fundamentally fair trial. A review of the remarks and the context in which they were made makes this evident.

First, as noted above, there is no evidence that petitioner groomed "boys," manipulated "them" or did things to take advantage of "them," to support the prosecutor's claim that petitioner was a serial predator. The prosecutor's remarks that petitioner had this type of sexual history was quite likely to have misled the jury. Calling a defendant names, such as "demon," "deadbeat," "thief," "creep," "liar," or "predator" does not, in and of itself, violate a defendant's due process. *See Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (citing cases). However, in this case, the prosecutor's statements went beyond such "name calling." "[S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." *Young,* 470 U.S. at 18.

Second, the remarks were not isolated, but were extensive. The statements listed above were made in the opening statement, closing argument and on rebuttal. Trial Trans. I at 46; III at 34-35, 48.

Third, these arguments were deliberately placed before the jury as the People's theory of the case, having been announced as such by the prosecutor in his opening, *supra.*

Fourth, as previously discussed, the overall strength of the case was borderline, having led to an initial mistrial. Had the *Brady* evidence been permitted as well, the strength of the

prosecution's case would have been highly doubtful, assuming, *arguendo*, the *Brady* violation itself was not a sufficient ground for reversal. While the trial judge instructed the jury that the attorneys' statements did not constitute evidence,[9] this instruction was insufficient to address the prejudicial effect of the prosecutor's flagrant and factually unsupported remarks.

Having determined that prosecutorial misconduct occurred, the court must now consider whether the procedural default of this claim should be excused due to the ineffective assistance of petitioner's trial counsel in failing to object. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.

---

[9] See Trial Trans. III at 51 ("[y]ou should only accept things the attorneys said that are supported by the evidence or by your own common sense and general knowledge").

The court concludes that trial counsel was deficient in failing to object to the prosecutor's comments, which constituted prosecutorial misconduct. *See Reed v. United States*, 133 Fed. Appx. 204, 208 (6th Cir. 2005) ("[a] failure to object to a prosecutor's comments or to raise the issue on direct appeal does not fall below an objective standard of reasonableness *unless the comments constituted prosecutorial misconduct*") (emphasis added). Petitioner was prejudiced by these unsubstantiated statements, which denied him a fundamentally fair trial. *See discussion, supra*.

For these reasons, the court concludes that petitioner's due process rights were violated by prosecutorial misconduct and that his own counsel provided ineffective assistance as guaranteed by the Sixth Amendment. The state court's decision was an unreasonable application of clearly established Federal law as determined by the Supreme Court. 28 U.S.C. § 2254 (d). Petitioner was denied a fundamentally fair trial and is entitled to habeas relief on these issues.

## D. Sentencing issue

Finally, petitioner contends that the trial court mis-scored three offense variables ("OV"), i.e., OV 8 (asportation of the victim); OV 10 (predatory conduct); and OV 11 (multiple penetration). In addition, petitioner contends that the trial court sentenced him based upon inaccurate information in violation of the Fourteenth Amendment.

### 1. Mis-scored OV's under Michigan law

Petitioner's claim that the trial court mis-scored the OV's is a matter of state law not cognizable on federal habeas review. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ on the basis of a perceived error of state

law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas corpus relief does not lie for errors

of state law, which includes the state's computation of petitioner's prison term. *Kipen v. Renico*,

65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See Austin v. Jackson,* 213

F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject

to federal habeas relief); *Braun v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts can

not review a state's alleged failure to adhere to its own sentencing procedures"). "As long as the

sentence remains within the statutory limits, trial courts have historically been given wide discretion

in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at

301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949). Petitioner is not entitled to federal

habeas relief on this state law claim.

## 2. Due process claim

Defendants have a federal due process right to a sentence based upon accurate

information. *United States v. Tucker*, 404 U.S. 443, 447(1972) ("we deal here, not with a sentence

imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon

misinformation of constitutional magnitude"); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("[i]t

is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless

or designed pronouncement of sentence on a foundation so extensively and materially false, which

the prisoner had no opportunity to correct by the services which counsel would provide, that renders

the proceedings lacking in due process"). "To demonstrate a due process violation 'the defendant

must establish that the challenged evidence is materially false or unreliable, and that such false or

unreliable information actually served as the basis for the sentence.'" *United States v. Jones*, 40

Fed. Appx. 15, 17 (6th Cir. 2002), quoting *United States v. Silverman*, 976 F.2d 1502, 1512 (6th

Cir.1992) (emphasis deleted) and *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990)). The evidence relied upon at sentencing can pass the due process requirement provided that it bears "some minimal indicia of reliability." *Robinson*, 898 F.2d at 1115.

Petitioner has presented only the most cryptic arguments and legal citations in support of his due process claims. Petitioner has failed to discuss the concept of "predatory conduct" as the term applies in OV10. Similarly, petitioner does not address the concepts of "asportation of the victim" or "multiple penetrations" as those terms apply in OV 8 and 11, respectively. Petitioner simply states that these OV's were not present. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

## V. Recommendation

I respectfully recommend that Petitioner's Motion to Amend (docket no. 51) be **DENIED.**

I further recommend that petitioner's habeas petition be **conditionally GRANTED** on the grounds that (1) the prosecutor committed a *Brady* violation, (2) the prosecutor engaged in misconduct, and (3) the assistance of trial counsel was ineffective. *See* Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

I further recommend that unless a date for a new trial is scheduled within ninety (90) days of this court's order granting the writ, petitioner Cox be unconditionally released from custody and the charges be dismissed.

Dated:  September 29, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).